United States District Court
Southern District of Texas
**ENTERED**
September 20, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| STEVEN HILLESTAD | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:17–CV–00341 |
| LLOG EXPLORATION COMPANY, LLC, ET AL. | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Transfer Venue for Forum *Non Conveniens* ("Motion to Transfer Venue").[1] Dkt. 22. The Motion to Transfer Venue was referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Dkt. 30. Having considered the motion, response, reply, and applicable law, the Court RECOMMENDS that the Motion to Transfer Venue be DENIED.

## BACKGROUND

In 2016, Plaintiff Steven Hillestad ("Hillestad"), an employee of Wood Group PSN, Inc. ("Wood Group"), worked as an operator aboard the Grand Isle 115-A Platform ("the Platform") off the coast of Louisiana. In November of that year, Hillestad was seriously

---

[1] The title of the Motion to Transfer Venue indicates that it is based on a "Forum *Non Conveniens*" theory. The body of the motion, however, indicates that it is based on convenience grounds under 28 U.S.C § 1404(a). The cause of this discrepancy is unclear. But for the benefit of the litigants, the Court notes that when a party "seeks transfer to another federal [court], forum non conveniens is an improper method of transfer." *Stuart v. Fire-Dex, LLC*, No. CIV.A. H-13-675, 2013 WL 5852234, at *4 (S.D. Tex. Oct. 30, 2013). A motion based on "28 U.S.C. § 1404(a) is the proper method." *Holmes v. Energy Catering Servs., LLC*, 270 F. Supp. 2d 882, 886 (S.D. Tex. 2003).

injured aboard the Platform in a flash fire (hereinafter "the Incident"). Hillestad filed this suit under the Outer Continental Shelf Lands Act against the Platform operators—Defendants LLOG Exploration Company, L.L.C. and LLOG Exploration Offshore, LLC—and the employer of the individual in charge on the Platform—Defendant Danos, L.L.C (collectively "Defendants"). Hillestad's employer, Wood Group, is not a party to this lawsuit.

Defendants have moved to transfer this case to the Houston Division, arguing that it is a more convenient forum.

## LEGAL FRAMEWORK

28 U.S.C. § 1404(a) allows a district court to transfer a civil action "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." The statute is intended to save "time, energy, and money while at the same time protecting litigants, witnesses, and the public against unnecessary inconvenience." *Republic Capital Dev. Grp., L.L.C. v. A.G. Dev. Grp., Inc.*, No. H–05–1714, 2005 WL 3465728, at *8 (S.D. Tex. Dec. 19, 2005). Motions to transfer venue under § 1404(a) are committed to the sound discretion of the district court. *See Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). The party seeking transfer has the burden of showing good cause for the transfer. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*"). The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff." *Id.*

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*"). Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case.

The private factors include: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766–67 (5th Cir. 2016) (citation omitted). The public factors include: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *See id.* at 767 (citation omitted). The Court will address each of these factors.

The plaintiff's choice of venue is not a factor in this analysis. *See In re Volkswagen II*, 545 F.3d at 314–15. Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315. "[B]y requiring that a movant show the transferee venue is clearly more convenient, a plaintiff's choice of venue is given some—significant but non-determinative—weight." *Mata v. Freeport McMoran Inc.*, No. 3:15-CV-00155, 2016

WL 6037237, at *2 n.2 (S.D. Tex. Oct. 14, 2016) (Hanks, J.) (citations, internal quotation marks, and brackets omitted). Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

## ANALYSIS

The Court first addresses "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen I*, 371 F.3d at 203 (citation omitted).

Defendants' Motion to Transfer Venue from the Galveston Division to the Houston Division is brought solely on convenience grounds under 28 U.S.C. § 1404(a). In his Complaint, Hillestad asserted that "[v]enue is proper . . . pursuant to 28 U.S.C. §1391 as Defendant[s] reside[] in [the Southern] District [of Texas]." Dkt. 1 at 2. Defendants have admitted this allegation in their respective answers to the Complaint. *See* Dkts. 5 at 2, 11 at 2, 19 at 2. Thus, the Southern District of Texas, which contains both the Galveston Division and Houston Division, is an undisputed proper venue for this lawsuit. *See Perry v. Autocraft Invs., Inc.*, No. 4:13-CV-01959, 2013 WL 3338580, at *2 (S.D. Tex. July 2, 2013) (Costa, J.) ("The venue statute, 28 U.S.C. § 1391, is based on districts, not divisions. If venue is proper in Galveston, it is also proper in Houston.").

### A. PRIVATE INTEREST FACTORS

#### 1. Relative Ease of Access to Sources of Proof

The first private interest factor concerns the relative ease of access to sources of proof. Defendants make several arguments regarding three broad categories of proof:

4

documents and records; witness testimony; and attorney convenience. The Court finds that only Defendants' argument concerning documents and records is properly considered under the first private interest factor.[2] *See e.g., Equal Employment Opportunity Comm'n v. Faurecia Auto. Seating, LLC,* No. 4:16-CV-199-DMB-JMV, 2017 WL 4158624, at *3 (N.D. Miss. Sept. 19, 2017) ("The first factor focuses on the location of the relevant 'documents and physical evidence' relative to the transferee and transferor venues."); *Lugo v. Geo Grp., Inc.*, No. 2:17-CV-20, 2017 WL 1807678, at *2 (S.D. Tex. May 5, 2017) ("This factor is analyzed in light of the distance that documents, or other evidence, must be transported from their existing location to the trial."); *Coleman v. Trican Well Serv., L.P.*, 89 F. Supp. 3d 876, 881 (W.D. Tex. 2015) ("[T]he first factor to consider is the relative ease of access to sources of proof, specifically documents and records.").

Defendants assert that the parties and certain non-parties possess relevant documents and records that are either located in Houston or Louisiana. More specifically, Defendants contend that all of the relevant documents possessed by the Wood Group (a non-party)—including Hillestad's personnel file, and numerous documents pertinent to the Incident and its attendant investigation—are all located in Houston. Defendants also assert that Hillestad's medical records, which were created by his Houston-based treating physicians (also non-parties), are located in Houston. With respect to Defendants' relevant

---

[2] Although the Court does not consider Hillestad's arguments about witness testimony in the context of the first private factor, such arguments will be considered, as appropriate, in the context of the other private interest factors directly related to witness testimony. Defendants' argument that Houston is more convenient for all attorneys falls flat because "the convenience of attorneys is not a consideration in the section 1404(a) convenience transfer analysis." *Perry*, 2013 WL 3338580, at *2 (citing *In re Volkswagen I*, 371 F.3d at 206).

documents and records, Defendants readily admit that all such documents are located in Louisiana, not in Houston or Galveston. Hillestad does not contest the location of the documents and records. Instead, he argues that in this digital age, the physical location of documents is less important because documents are generally easily produced and transported in a digital format. Neither Hillestad nor Defendants have identified any specific proof, or even categories of proof, located in Galveston.

In *Radmax*, the Fifth Circuit explained that when assessing the parties' access to sources of proof the "*relative* ease of access, not *absolute* ease of access" is the relevant inquiry. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). The Fifth Circuit ruled in favor of transfer because "all of the documents and physical evidence are located in the [transferee] Division." *Id.* (internal quotation marks and brackets omitted). *See also Perry*, 2013 WL 3338580, at *2 (determining that the first private factor favored transfer because the accident and all of plaintiff's medical treatment occurred in the transferee location). Generally, "[when] neither party has identified any potential sources of proof in the Galveston Division, Houston's relatively easier access to potential documentary evidence favors transfer." *Hebert v. Wade*, No. 3:13-CV-00076, 2013 WL 5551037, at *3 (S.D. Tex. Oct. 7, 2013) (Costa, J.).

Here, neither party has identified any sources of proof located in the Galveston Division, but Defendants have offered sources of proof that are located in both Houston and Louisiana. The Court finds that this factor does not weigh as strongly in favor of transfer in this case because, unlike in *Radmax*, all of the evidence is not located in the transferee location. The weight of this factor is further diminished because this case, at its

6

core, is a personal injury suit, and in such cases, documentary evidence is rarely a significant factor. *See, e.g., Bennett v. Moran Towing Corp.*, 181 F. Supp. 3d 393, 399 n.3 (S.D. Tex. 2016) (Hanks, J.) ("Although the Court has considered the parties' relative ease of access to documentary evidence [in] this case, such access is rarely a significant factor in a personal injury case because such actions are 'unlikely to require extensive paper discovery or additional difficulties in accessing sources of proof.'") (collecting cases).

Accordingly, the first private interest factor narrowly favors transfer under *Radmax*, but the weight of this factor is diminished given the nature of Hillestad's claim.

## 2. Compulsory Process to Secure the Attendance of Unwilling Witnesses

The second private interest factor examines the availability of compulsory process over witnesses. Defendants contend that this factor is neutral "because all material witnesses are subject to the Houston Division and Galveston Division's subpoena power or are outside the Houston Division and Galveston Division's subpoena power." Dkt. 22 at 10. As such, Defendants have not identified any witnesses for whom compulsory process will be needed. Based on this fact, the Court finds that this factor is neutral. *See e.g., Sivertson v. Clinton*, No. 3:11-CV-0836-D, 2011 WL 4100958, at *5 (N.D. Tex. Sept. 14, 2011) (finding second factor neutral where Defendant failed to "identif[y] any witnesses for whom compulsory process will be needed"); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. CIV.A. 309-CV-0488-D, 2009 WL 2634860 at *5 (N.D. Tex. Aug. 26, 2009) (finding second factor was neutral because defendant failed to identify witnesses for whom compulsory process would be needed).

### 3. Cost of Attendance for Willing Witnesses

The third private interest factor, which is "probably the single most important factor in the transfer analysis," considers the cost of attendance for willing witnesses. *Sandbox Logistics LLC v. Grit Energy Sols. LLC*, No. 3:16-CV-12, 2016 WL 4400312, at *5 (S.D. Tex. Aug. 17, 2016) (Hanks, J.) (citation and internal quotation marks omitted). As previously explained by Judge George C. Hanks, Jr.:

> The inconvenience to witnesses increases with the additional distance to be traveled, including additional travel time, meal, lodging expenses, and time away from their regular employment. The Court must also consider the personal costs associated with being away from work, family, and community.

*Id.* "[I]t is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *State Street Capital Corp. v. Dente*, 855 F. Supp 192, 198 (S.D. Tex. 1994) (collecting cases). "Particularly, it is the location of key, non-party witnesses that dominates." *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 410 (S.D. Tex. 2016) (Hanks, J.) (internal quotation marks omitted). The convenience of one key witness may outweigh the convenience of numerous less important witnesses. *See, e.g., Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399, 401–02 (N.D. Tex. 1984). "To designate a potential witness as 'key' under the inquiry, 'the movant must specifically identify the key witnesses and outline the substance of their testimony.'" *Faurecia Auto. Seating, LLC*, 2017 WL 4158624, at *5 (quoting *Watson*, 181 F. Supp. 3d at 410) (brackets omitted). "Nevertheless, 'although quite important, the convenience of witnesses does not stand alone and must be weighed against the other relevant factors that typically are

considered.'" *Sandbox Logistics*, 2016 WL 4400312, at *5 (quoting 15 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3851).

Because the convenience of non-party witnesses is paramount, the Court begins its discussion with the non-party witnesses identified by Defendants. Defendants specifically identify by name two Wood Group employees—both of whom "work in Wood's Houston office"—and the substance of their anticipated testimony. Dkt. 22-3 at 2. Defendants also specifically identify Hillestad's treating physicians—both of whom have medical practices in Houston—as prospective non-party witnesses, and Defendants quote Hillestad's initial disclosures to outline the substance of their anticipated testimony. With much less specificity, Defendants have indicated that other non-party fact witnesses, who are all Wood Group employees, are located in Louisiana. But Defendants do not specifically identify these other Wood Group employees, outline the substance of their anticipated testimony, or indicate how many other Wood Group employees are expected to testify.

In sum, Defendants have specifically identified four non-party witnesses—the two treating physicians and two Wood Group employees. With respect to the Wood Group witnesses, Defendants have submitted evidence, by way of affidavit, establishing the office location of the two witnesses. Notably, the affidavit does not address where the Wood Group witnesses reside. Similarly, Defendants merely offer the office addresses of the treating physicians, but, again, no mention of where the physicians reside. The Defendants failure to establish where the witnesses reside, as opposed to where they work, is problematic for two reasons. First, the case law strongly indicates that in considering the third private interest factor, the Court's focus is where a non-party witness resides not

9

where he works. *See e.g., Mata,* 2016 WL 6037237, at *5 (holding the third factor favored retention because "there is . . . a sizable population of witnesses . . . whose *residence* is 'unknown'") (emphasis added); *Watson*, 181 F. Supp. 3d at 411 (finding third factor favored transfer where "[Plaintiff], most Defendants, [Plaintiff's] employer—a non-party—and all witnesses including key non-party fact witnesses, *reside* far from Galveston") (emphasis added); *Barnes v. Romeo Papa, LLC*, No. 3:12-CV-365, 2013 WL 3049236, at *2 (S.D. Tex. June 17, 2013) (Costa, J.) (discussing where the lone non-party witness was "believed to *reside*") (emphasis added); *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) (explaining the third factor favors transfer "[w]hen nearly all of the [key] nonparty witnesses . . . *reside* elsewhere") (emphasis added); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 826 (S.D. Tex. 1993) (considering residency of non-party witnesses). Second, in the Lone Star State, it is common for individuals to live and work in different cities.[3] Given this reality, as a practical matter, the mere location of the non-parties' workplace, without more, is simply insufficient to demonstrate that a transfer from the Galveston Division to the Houston Division would be more convenient to the non-parties because their residence may well be closer to Galveston than Houston. This possibility is especially pertinent here because Defendants' argument regarding the convenience of the non-parties is based primarily, if

---

[3] Indeed, the undersigned and his entire staff travel every day from neighboring cities (Stafford and Houston) to Galveston for work.

not solely, on the mileage the non-party witnesses would have to drive to get to the courthouse.

Further compounding the deficiencies described above is the fact that the entire argument regarding the convenience of the non-parties is presented from the viewpoint of Defendants, with absolutely no input from the non-parties. In other words, the Court is left to decide the convenience of non-parties who have not expressed any preference or thoughts on the matter. Because the non-parties did not participate in seeking this transfer, "there is no evidence as to whether [the non-parties] would be 'willing' or 'unwilling' to be [] witness[es] in this case." *Mata*, 2016 WL 6037237, at *5. "The Court declines to simply fill in the blanks." *Id.* As such, the non-party witnesses identified by Defendants do not tip this factor in their favor.

Turning to the party witnesses, Defendants assert that four specific party witnesses reside in Louisiana, and for those witnesses, "travel would be more convenient . . . if the case is transferred to Houston." Dkt. 22 at 8. This is because "the Houston federal courthouse is much closer to Houston Hobby airport than the Galveston federal courthouse, resulting in the reduction in the costs of a taxi or rental car, and less time away from the office and home." *Id.*

Initially, the Court observes that Defendants' "Hobby Airport argument" concerns *party witnesses*, and party witnesses are not the focus of the third private interest factor. *See, e.g., USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (explaining the third factor "primarily concerns the convenience of nonparty witnesses" and declining to consider parties' employees under

11

third factor). From a factual standpoint, the distance from Hobby Airport to the Galveston federal courthouse, as compared to the Houston federal courthouse, is negligible. Hobby Airport is approximately 11 miles from the Houston federal courthouse, and approximately 42 miles from the Galveston federal courthouse. In other words, the Houston federal courthouse is only roughly 30 miles closer to Hobby Airport than the Galveston federal courthouse. Put another way, the drive from Hobby Airport to the Galveston federal courthouse is approximately 30 minutes longer than the drive from Hobby Airport to the Houston federal courthouse. In sum, Defendants' argument boils down to weighing the convenience occasioned by driving 30 fewer miles in 30 less minutes. The Court does not totally discount that the shorter drive distance and time represents a quantifiable measure of relative convenience to the party witnesses. However, such relative convenience is so slight that it barely tips this factor in favor of transfer.[4] After all, it is not as if the Galveston courthouse is located in the "wastelands of Siberia,"[5] "the wilds of Alaska[,] or the furthest reaches on the Continental United States."[6] To the contrary, the drive to Galveston is serene, if not majestic. The party witnesses (and the non-party witnesses) will likely enjoy the smooth ride provided by the newly renovated highway leading to the island. They may gasp, as so many have, at the beauty confronting them as they traverse

---

[4] "Hobby's distance of 40 miles to the Galveston Federal Courthouse is not a significantly more arduous journey than the [11 miles from Hobby to the Houston Federal Courthouse], particularly when the free, nearby, and widely available parking at the Galveston federal building is taken into account." *Barnes*, 2013 WL 3049236 at *3 n.1.

[5] *Jarvis Christian Coll.*, 845 F.2d at 528.

[6] *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992).

the causeway.[7] From the apex of the causeway, it is quite a spectacle—Galveston Bay appears as a sheet of glass, mirroring and magnifying the bright rays of the sun and clouds. The opportunity to gaze upon such beauty, while reflecting inwardly on the looming legal tasks, can hardly be described as an inconvenience. *See, e.g., Smith v. Colonial Penn Ins. Co.*, 943 F. Supp. 782, 784 (S.D. Tex. 1996) (noting "any inconvenience suffered in having to drive to Galveston may likely be offset by the peacefulness of the ride and the scenic beauty of the sunny isle").

Given the close proximity of Galveston and Houston, the fact that the only witnesses properly offered for the Court's consideration are party witnesses (as opposed to key non-party witnesses), and the very minimal benefit the party witnesses will experience if venue were transferred, the Court finds that although this factor slightly favors transfer, it is entitled to very little weight. *See, e.g., Faurecia Auto. Seating, LLC*, 2017 WL 4158624, at *5 ("However, because [Defendant] has failed to show or argue that any of these witnesses may be deemed key non-party witnesses, the Court gives this factor little weight.") (citation omitted).

### 4. Other Practical Problems

The fourth private interest factor is all other practical problems that make going to trial easy, expeditious, and inexpensive. "Practical problems include those that are rationally based on judicial economy." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 6:09-CV-

---

[7] As an aside, the Court recommends "Galveston," Glen Campbell's 1969 number one hit single on the Hot Country Singles and Easy Listening charts, as the perfect soundtrack for the journey to the historic Galveston federal courthouse. *See* GLEN CAMPBELL, GALVESTON (Capitol Records 1969).

446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. App'x 295 (Fed. Cir. 2011). The Fifth Circuit has clarified that "the garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *In re Radmax*, 720 F.3d at 289.

Here, neither party specifically identifies any "practical problems" based on judicial economy that would make trial of the case in either Galveston or Houston more or less easy, expeditious, and inexpensive. Nonetheless, the Court *sua sponte* finds that this factor favors retention given the relevant procedural background involved in this case.

Hillestad filed this suit in November 2017. Danos, L.L.C. filed its answer on December 14, 2018. LLOG Exploration Company, L.L.C.'s and LLOG Exploration Offshore, LLC's answers were due on December 28, 2018—both parties moved to extend their answer deadline. The Court granted their motion, extending the answer deadline to January 31, 2018. By January 31, 2018, all Defendants had filed their answers.

On March 2, 2018, the parties submitted their Joint Discovery/Case Management Plan, indicating that they believed discovery could be completed by November 30, 2018. Several days later, the Court held its Initial Scheduling Conference. At the Initial Scheduling Conference, the Court informed the parties that it was inclined to enter a scheduling order utilizing the deadlines specified in the parties' Joint Discovery/Case Management Plan. The parties were generally agreeable with this, except they specifically requested that the Court provide a trial date earlier than originally proposed by the Court. The Court honored the parties' request. In the end, the Court entered a Docket Control Order containing the November 30, 2018 discovery deadline offered by the parties, and

based on the parties' request for an early 2019 trial date, the Court adjusted the dispositive motion deadline (to November 26, 2018) and scheduled the trial for March 2019. The Defendants did not raise the prospect of transferring venue at the Initial Scheduling Conference or within their Joint Discovery/Case Management Plan.

On April 26, 2018, a little over four months after the parties' answers were originally due, and nearly six months after the Complaint was filed, Defendants filed a letter requesting a pre-motion conference to discuss their intent to file the instant Motion to Transfer Venue. The Motion to Transfer Venue was filed on May 30, 2018, and the subsequent briefing was completed on July 2, 2018. Thus, at the time that the Motion to Transfer Venue was fully briefed, the discovery and dispositive motion deadlines were just some five months away.

In *Hibbard v. Target Corporation*, Judge Gregg Costa, the then District Judge for the Galveston Division, considered a defendant's motion to transfer to the Houston Division on convenience grounds. No. 3:12-CV-344, 2013 WL 4677831 (S.D. Tex. Aug. 30, 2013) (Costa, J.). Judge Costa began his discussion by noting that, earlier that year, in *Perry*, he had granted a similar transfer to the Houston Division on convenience grounds. *Id.* at *1. Judge Costa explained, however, that *Perry* would not control his decision because in "*Perry*[, the] defendant filed the motion to transfer with its answer, and [Judge Costa] entered the transfer order before ever issuing a schedule or holding a hearing." *Id.* After collecting and discussing various authorities demonstrating that a delay in filing is properly analyzed under the fourth private interest factor, Judge Costa held:

> The current scheduling order's deadline for discovery and dispositive motions is a little more than three months away. . . . Transferring to Houston, where the case would require a new scheduling order and trial setting, at this late stage is therefore likely to cause significant delay. The . . . interest in 'expeditious and inexpensive' litigation thus weighs against transfer.

*Id.* at *1 (citations omitted).

The facts presented here are substantially similar to those in *Hibbard*. Defendants first raised the issue of transferring the case almost six months after the Complaint was filed, four months after all answers were due, and almost two months after attending an Initial Scheduling Conference and saying nothing to alert the Court that venue was an issue. If the Court now transfers this case to Houston, where the case would require a new scheduling order and trial setting, the parties certainly will not have this case resolved in early 2019—the trial period the parties specifically sought at the Initial Scheduling Conference. In other words, a transfer "at this late stage is . . . likely to cause significant delay." *Id.* For all of these reasons, the Court finds that the likely delay in this case is not of the garden-variety, and this factor weighs strongly in favor of retention.

The court now turns to the public interest factors.

## B. PUBLIC INTEREST FACTORS

### 1. Administrative Difficulties Flowing from Court Congestion

The focus of the first public-interest factor is "'not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" *Rosemond v. United Airlines, Inc.*, No. H–13–2190, 2014 WL 1338690, at *4 (S.D. Tex. Apr. 2, 2014) (quoting *Siragusa v. Arnold,* No. 3:12–CV–04497–M, 2013 WL 5462286, at *7 (N.D. Tex. Sept. 16, 2013)). Defendants argue this

16

factor is neutral because any difference in the disposition time between Galveston and Houston will only be a matter of a few months, which is negligible. In response, Hillestad quotes this Judge Hanks's 2016 *Sandbox* opinion, in which he noted that the "Galveston Division's lighter criminal docket allows it to resolve civil matters more quickly[,] . . . [and,] [t]hus, this factor favor[ed] retaining the case." 2016 WL 4400312, at *7. Since issuing the *Sandbox* opinion, an eager, earnest, energetic, and erudite United States Magistrate Judge has joined Judge Hanks in the Galveston Division. As a result, the Galveston Division is fully staffed and firing on all cylinders, and the Court has been shuttling cases towards trial even more quickly than when *Sandbox* was written. For this reason alone, this factor favors retention. This is so even if Defendants' argument regarding disposition time is accurate. As detailed above, this case is already well down the path towards the parties' requested early 2019 trial setting. This means, in track terms, the parties are already near the finish line that the Court moved closer for their convenience. Based on these facts, Defendants will certainly receive a more speedy trial in this Court, notwithstanding any general statistic about trial dispositions that might suggest otherwise.

    Thus, this factor strongly favors retention.

**2. Local Interest in Having Localized Interest Decided at Home**

The second public interest factor evaluates the local interest in the dispute. Defendants argue that Galveston does not have a local interest because none of the witnesses or parties is located in the division. Defendants contend that Houston has a greater local interest because some of the non-party witness offices are in Houston, and

some of their relevant records are located in Houston. Based on these contentions, Defendants argue this factor weighs in favor of transfer to the Houston Division. Hillestad disagrees, arguing that this factor is neutral because neither the Galveston Division nor Houston Division has a local interest given that the incident giving rise to this suit occurred off the coast of Louisiana.

The local interest factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *In re Volkswagen I*, 371 F.3d at 206. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co., L.P. v. BMJ Foods P.R., Inc.*, 3:07–CV–2042–D, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008). In this case, the acts giving rise to the lawsuit occurred off the coast of Louisiana. Neither the Galveston Division nor Houston Division has any special or meaningful connection to the facts giving rise to the lawsuit. Although the Court recognizes Defendants' argument regarding certain witnesses and records, it is simply insufficient to demonstrate that the Houston Division has a greater local interest than the Galveston Division. Because the facts giving rise to this case are unrelated to the Galveston and Houston Divisions, the Court regards this factor as neutral.

### 3. Familiarity of the Forum with the Law that Will Govern the Case

Neither this Court nor Houston Division is more or less familiar with Texas law, which will govern this case. Therefore, this factor is neutral.

### 4. Avoidance of Conflict of Laws or in Application of Foreign Law

The last factor—the possible conflicts of law arising from the application of foreign law—does not affect the analysis. Because there are no conflict of laws issues that would

make this case better suited for either this Court or the Houston Division, this factor cannot weigh either for or against transfer. Accordingly, this factor is neutral.

## CONCLUSION AND RECOMMENDATION

After weighing the factors, the Court concludes that the two factors favoring retention in the Galveston Division (Private Interest Factor 4: all other practical problems that make going to trial easy, expeditious, and inexpensive; and Public Interest Factor 1: administrative difficulties flowing from court congestion), clearly outweigh those favoring transfer to the Houston Division (Private Interest Factors 1 and 3: relative ease of access to sources of proof and cost of attendance for willing witness). Consequently, Defendants have failed to meet their burden of establishing that Houston is "clearly more convenient." *In re Volkswagen II*, 545 F.3d at 315. For this reason, the Court RECOMMENDS that Defendants' Motion to Transfer Venue for Forum *Non Conveniens* (Dkt. 22) be DENIED.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 20th day of September, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE